IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| GALEN R. REICHLEY t/a | * | Chapter 13 |
| REICHLEY BROTHERS, | * | Case No.: 1-03-bk-01663 |
| Debtor | * | |
| | * | |
| ALLEN L. REICHLEY t/a | * | Chapter 13 |
| REICHLEY BROTHERS, | * | Case No.: 1-03-bk-01664 |
| Debtor | * | |
| | * | |
| GORDON BROTHERS RETAIL | * | |
| PARTNERS, LLC., et al, | * | |
| Plaintiffs | * | |
| | * | Adv. No.: 1-04-ap-00216 |
| v. | * | |
| | * | |
| MANUFACTURERS AND TRADERS | * | |
| TRUST COMPANY and FIRST | * | |
| AMERICAN TITLE INSURANCE CO., | * | |
| Defendants | * | |

## OPINION

Before the Court are the following: (1) the Motion for Summary Judgment ("Motion") by Plaintiffs Gordon Brothers Retail Partners, LLC, Clearbid, Inc., and Agricapital Corporation, as successor to Agway, Inc., (collectively "Gordon") and (2) the Cross-Motion for Summary Judgment on Counterclaim ("Cross-Motion") filed by Manufacturers and Traders Trust Company as successors-in-interest to Keystone Financial Bank, NA ("M&T"). For the reasons stated below, M&T's Cross-Motion is granted, and Gordon's Motion is denied.

## BACKGROUND

Gordon filed an adversary complaint seeking a declaratory judgment that the mortgage executed by Galen R. Reichley, Allen L. Reichley ("Debtors") and other members of the Reichley family in favor of Agway, Inc. ("Agway") is senior in priority to mortgages executed

1

by Debtors in favor of Keystone Financial Bank, NA ("Keystone"). M&T, successor in interest to Keystone, filed an answer to the complaint asserting the priority of its mortgages.

Debtors are brothers who owned and operated poultry and dairy farms in Union County, Pennsylvania under the trade name "Reichley Brothers."[1] The farms included two parcels of land, one consisting of 96 acres ("Tract I") and the other consisting of 99 acres ("Tract II"). On March 16, 1998, Debtors and other members of the Reichley family executed a document entitled "Continuing Unlimited Guaranty of Payment" ("Guaranty") requiring "the full and prompt payment of any indebtedness and obligation of [Guarntors] ... whether such indebtedness or obligation now exists, or is incurred hereafter, and in whatever form it may be evidenced." The Guaranty executed in favor of Agway was not recorded, and Debtors did not commence making purchases from Agway under the Guaranty until April 2002. On December 30, 1998, the parties on the Guaranty executed a mortgage ("the Agway Mortgage") as security for the Guaranty. This mortgage attached to both Tracts I and II, as well as to two other much smaller properties (Tracts III and IV). Agway recorded its mortgage with the Union County prothonotary on March 26, 1999.

On the same date the Agway Mortgage was signed, Debtors also executed a "Commercial Line of Credit Note" ("Note") in favor of Agway in an amount not to exceed $500,000.00. As security for the Note, Debtors executed a "Pledge of Collateral" ("Pledge") in which they authorized Agway to hold certain property, including real estate, as security for all debts "now or subsequently owed." The Note was not recorded, nor was it referenced in the Agway mortgage.

---

[1] On July 18, 2003, their bankruptcy cases were consolidated for administrative purposes.

On August 17, 1999, Debtors borrowed $172,800.00 from Keystone through two loan transactions secured by mortgages recorded on August 24, 1999 against Tracts III and IV.  On August 26, 1999, Agway executed two mortgage subordinations in which it agreed to subordinate its lien on Tracts III and IV to Keystone's lien.  The subordinations were recorded with the Union County prothonotary's office on August 31, 1999.  On September 23, 1999, Keystone extended an additional loan to Debtors in an amount of $607,000.00 secured by mortgages recorded on September 24, 1999 against Tracts I, II, III and IV (collectively "the Keystone Mortgages").  Keystone did not provide actual notice to Agway of the recording of the mortgages.

On March 21, 2003, Debtors filed the instant petitions in Chapter 13.  Agway's claim was listed in the Debtors' schedules as an unsecured nonpriority claim of $768,741.51. Approximately one year after the Debtors filed for relief, Keystone requested Agway to subordinate its mortgage against Tract II to Keystone's mortgage.  Agway declined the request and, in the same month, assigned its rights in the mortgage to Gordon.

On April 22, 2004, Debtors filed a motion to sell Tract I for $295,000.00 free and clear of both the Agway and the Keystone mortgages.  Agway agreed to allow the sale to go forward if the sale proceeds were escrowed until the Court could resolve the dispute as to the priority of the competing claims.  An Order to that effect was entered on May 25, 2004, and the sale was consummated thereafter.

On September 27, 2004, Gordon filed the instant adversary complaint seeking a declaratory judgment that the Agway mortgage is senior to the Keystone mortgage against Tract I and an order directing that the sale proceeds be distributed to Gordon.  On October 8, 2004,

3

Case 1:04-ap-00216-MDF    Doc 29    Filed 07/05/05    Entered 07/07/05 12:54:56    Desc
Main Document      Page 3 of 10

Debtors sought authority from the Court to sell Tract II for $475,000.00 free and clear of liens. The Court approved the sale of Tract II under the same conditions as set forth in the Order approving the sale of Tract I. Thereafter, the sale of Tract II was consummated and the proceeds placed in escrow. Gordon amended its complaint to include Tract II in its request for entry of declaratory judgment in its favor. M&T filed an answer and counterclaim requesting the Court to determine that its mortgages enjoyed priority over Gordon's mortgage and that the sale proceeds should be paid to M&T.

## Discussion

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.B.P. 7056(c). The nonmovant's evidence must be accepted as true, all inferences must be drawn in the nonmovant's favor, and the court must not weigh the evidence or the credibility of witnesses. *Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358 (3d Cir. 1992). When opposing parties seek summary judgment, each motion must be considered separately. Both motions may be denied if both parties fail to meet their burdens. *In re Schreiber*, 163 B.R. 327 (Bankr. N.D. Ill. 1994).

The priority of non-federal liens is determined under state law. *Boring v. Promistar Bank*, 312 B.R. 789 (W.D. Pa. 2004); *In re Visiting Nurse Association of Western Pennsylvania*, 143 B.R. 633 (W.D. Pa. 1992). In Pennsylvania, the priority of competing liens is determined by

4

application of the principle "first in time, first in right."[2] *In re 250 Bell Road, Lower Merion Township, Montgomery County,* 279 Pa. 222, 388 A.2d 297 (1978), *citing Wilcocks v. Waln*, 10 Serg. & R. 380 (1824) (other citations omitted). Mortgages against real property (other than purchase money mortgages) have priority from the time they are "left for record." 42 Pa.C.S. §8141(2). Thus, at first blush, the Agway Mortgage appears to enjoy priority over the Keystone mortgage since it was left for record on December 30, 1998, nine months before the Keystone mortgage was recorded on September 23, 1999. However, when no funds are advanced at the time the mortgage is recorded, and the mortgage is alleged to secure future advances, establishing relative priorities is less straightforward.

Under 42 Pa.C.S.A. § 8143 et seq. "(Open-end Mortgage Law"), a mortgage securing future advances made after the mortgage is left for record has priority over a subsequently recorded mortgage if the lender of the first recorded mortgage is obligated to make the future advances.[3] Under Section 8143(f), an "open-end mortgage" is defined as:

> A mortgage which secures advances, up to a maximum amount of indebtedness outstanding at any time stated in the mortgage, plus accrued and unpaid interest. Such a mortgage shall be identified at the beginning thereof as an "open-end mortgage" and shall clearly state that it secures future advances, . . . .

42 Pa. C.S.A. § 8143(f).

---

[2] Under certain statutes not relevant here tax liens and other liens allowed by statute may be superior to a lien recorded first in time.

[3] If advances made under the loan are non-obligatory, third parties can modify the mortgage's priority through certain notice provisions. However certain loans, such as home equity lines of credit are deemed to be obligatory future advances. 42 Pa. C.S.A. § 8143(b). See Leonard A. Bernstein, *Pennsylvania Enacts Future Advance Mortgage Law*, 62 Pa. B.A.Q. 102, 104 (1991).

5

A review of the Agway Mortgage immediately reveals that it is not "identified at the beginning" as an "open-end mortgage". In fact, the Agway Mortgage does not contain the phrase "open-end" mortgage or reference that is intended to secure future advances anywhere within its four corners. While it does reference the Guaranty in its second paragraph, such reference is not the functional equivalent of an "identification at the beginning thereof as an open-end mortgage." Thus, the Agway Mortgage does not qualify as an open-end mortgage under the statute.

Although the Agway Mortgage does not constitute an open-end mortgage under the statute, compliance with the statute is not the exclusive means of establishing the priority of a mortgage that secures future advances. 42 Pa.C.S. §8143(e). Subsection (e) of 8143 provides that"[t]his section is not exclusive and shall not be construed to change existing law with respect to the priority of the lien of advances made pursuant to a mortgage except to the extent that it gives priority to the lien for advances under an open-end mortgage complying with the requirements of this section which would not have such priority in the absence of this section."

Under Pennsylvania common law, "an advance made pursuant to a mortgage to secure future advances which the mortgagee was not obligated to make, is subordinate in lien to an encumbrance intervening between the giving of the mortgage and the making of the advance, *if the advance was made with actual notice or knowledge of the intervening encumbrance*; the lien of an advance under such circumstances dates only from the time it was made and not from the time of the creation of the mortgage. In other words, after notice of the existence of a junior lien, the senior mortgagee will not be protected in making further advances under his mortgage unless he is under a binding obligation to make such advances." *Conshohocken Federal Sav. and Loan*

*Ass'n v. Period and Country Homes, Inc*., 287 Pa.Super. 520, 530, 430 A.2d 1173, 1178 (Pa. Super. 1981) (emphasis added), *citing Housing Mortgage Corp. v. Allied Construction, Inc.*, 374 Pa. 312, 97 A.2d 802 (1953).

M&T admits in the instant case that Keystone provided no formal notice of its mortgage to Agway. Therefore, Gordon argues, the *Conshohocken* decision dictates that this Court find that the Agway Mortgage is senior to the Keystone Mortgage. Gordon would be correct if the Agway Mortgage stated on its face that it was "a mortgage to secure future advances." However, the application of state law, as articulated by the Pennsylvania Supreme Court, leads to the conclusion that the Agway Mortgage fails to qualify as a future advance mortgage. The controlling case defining future advance mortgages under common law is *Western Pennsylvania National Bank v. Peoples Union Bank and Trust Co.,* 439 Pa. 304, 266 A.2d 773 (1970). In that case, Peoples Union Bank and Trust Company ("Peoples") provided a residential loan to the Orlandos in 1954. In 1967, the Orlandos borrowed money from Peoples to fund a business enterprise and executed a personal judgment note to guarantee the loan. They also orally agreed that their residential mortgage would serve as "side collateral" for the business loan. The 1954 mortgage contained no provision for the securing of future advances. One month after the Orlandos obtained the business loan from Peoples, they paid off the residential mortgage. Meanwhile, in 1966, the Orlandos obtained a loan from Western Pennsylvania National Bank ("WPNB") to finance their business and gave WPNB a personal judgment note to guarantee the loan. WPNB entered judgment on the note in October 1967. When Peoples entered judgment on its mortgage in December 1968 and moved to foreclose, WPNB initiated an action to enjoin the foreclosure. The trial court denied the injunction, holding that the oral agreement for the

7

residential mortgage to serve as "side collateral" for the loan was enforceable, implying that the oral agreement converted the mortgage to one intended to secure future advances. The Supreme Court rejected the trial court's analysis, which it found blurred the distinction between mortgages which specifically provide for the coverage of future advances and those that lack such provisions. The Court further noted that "[a] mortgage is a formal document of a specific character and should be strictly construed." *Id.* 439 Pa. at 308, 266 A.2d at 775. In a decision that foreshadowed the codification of the common law, the state Supreme Court held that "a mortgage which does not specifically indicate that it covers future advances gives the mortgagee no lien on the mortgaged property other than for the unpaid portion of the original advance." *Id.*

The Agway Mortgage references the Guaranty, which Gordon asserts provides the necessary language to create a future advance mortgage under common law. But as Justice Pomeroy noted in his concurring opinion in *Western Pennsylvania National Bank*, "to create an effective lien for future advances there must be some appropriate reference on the public records to the obligation to make such advances." *Id*. 439 Pa. at 311-12, 266 A.2d at 777. The provision in the Guaranty that obligated Debtors to pay any future indebtedness incurred sometimes is referred to as a "dragnet clause." These clauses are generally disfavored and are strictly construed. *First Seneca Bank v. Electralloy Corporation (In re Old Electralloy Corporation)*, 132 B.R. 705, 707 (Bankr. W.D. Pa 1991). Typically, these clauses are included in the recorded security agreement such as a financing statement or mortgage. Gordon argues that although the Agway Mortgage does not specify that it secures future advances, the Guaranty does, and the two documents must be read together. But in *Western Pennsylvania National Bank*, the Supreme Court clearly found that for a dragnet clause to be effective against third parties, it must be

8

included in the recorded document. *Western Pennsylvania National Bank*, 439 Pa. at 307, 266 A.2d at 775. *See also First Seneca*, 132 B.R. at 708. Thus, Pennsylvania common law on which Gordon relies, as well as Pennsylvania statutory law, bars a mortgage from securing future advances when it does not specifically include language to this effect in the mortgage. The Agway Mortgage is of record before this Court, and it clearly does not contain any language within its four corners that indicates that it was given to secure future advances. Therefore, the pleadings and evidence of record conclusively establish that there are no genuine issues of material fact, and that M&T is entitled to judgment as a matter of law.[4]

---

[4]In *Western Pennsylvania National Bank,* the Supreme Court stated that the issue in the case was "whether a mortgagee whose mortgage contains no provision with respect to future advances has a prior lien on the mortgaged property with respect to future advances as against a bona fide lien holder whose lien attaches after the future advances are made." *Western Pennsylvania National Bank*, 439 Pa. at 306-07, 266 A.2d at 775. The Court determined that it did not. Gordon attempts to distinguish this holding by asserting that when Keystone recorded its mortgage in September 1999, it was not a bona fide lien holder. "In a legal context, the term bona fide looks almost exclusively to subjective good faith. For example, a bona fide purchaser, a bona fide holder for value, a bona fide mortgagee or a bona fide possessor of property may be party to illegal transactions yet exempt from liability because the action was taken in subjective good faith irrespective of another's prior or superior claim of right to the property." *Slatkey v. Amoco Oil Company*, 830 F.2d 476, 489 (3d Cir. 1987). In the most simple terms, Gordon's argument is that Keystone cannot be a bona fide mortgagee because, even if the Agway Mortgage was legally insufficient to create a future advance mortgage, Keystone knew that Agway intended to secure future advances and Keystone is obligated to effectuate that intention. If Pennsylvania had adopted Restatement (Third) of Property (Mortgages) § 2.1, this argument would have merit. Section 2.1(c) provides that:
    (c) As against a person acquiring an interest in the mortgaged property subsequent to the mortgage, repayment of future advances will be secured only if [there is an agreement between the mortgagor and mortgagee] and
        (1) the mortgage states that repayment of future advances is secured; or
        (2) the person has other notice of the parties' agreement concerning future advances at the time the interest is acquired; or
        (3) the mortgage states a monetary amount to be secured.
Restatement (Third) of Property (Mortgages) § 2.1. In Pennsylvania, however, a mortgage is ineffective to secure future advances in the absence of specific language stating this intention. Therefore, whether or not Keystone was aware that Agway intended to create a future advance

9

Declaratory judgment will be entered in favor of M&T. As to the distribution of the proceeds of the sale of Debtors' real estate, on July 18, 2003, M&T filed a proof of secured claim in the amount of $603,631.06. Gordon admits that $695,594.48 currently is being held in escrow from the proceeds of the sales of Tracts I and II. Therefore, M&T's secured claim shall be paid in full and the balance of the proceeds distributed to Gordon.

An appropriate order will be entered.

BY THE COURT,

Mary D. France
Bankruptcy Judge

Date: July 5, 2005

*This electronic opinion is signed and filed on the same date.*

---

mortgage is irrelevant.